INTERNAL REVENUE SERVICE,
Appellant,

v.

Thomas MANDO, Appellee.

Civ. A. No. 93–111.

United States District Court,
E.D. Kentucky,
at Covington.

Jan. 4, 1994.

---

Gregory D. Stefan, U.S. Dept. of Justice, Washington, DC, for I.R.S.

Dennis R. Williams, Adams, Brooking, Stepner, Woltermann & Dusing, Florence, KY, for Mando.

### OPINION & ORDER

BERTELSMAN, Chief Judge.

### I. INTRODUCTION

This is a bankruptcy appeal, pursuant to 28 U.S.C. § 158(a). This case is before the court on the appeal of the Internal Revenue Service (IRS) and the cross-appeal of Thomas Mando.

### II. FACTUAL BACKGROUND

Appellee, Thomas Mando, is a trained optician, and was a stockholder of Tru–Site Laboratories, Inc. (Tru–Site), a Kentucky corporation. From its inception, Tru–Site engaged in the business of manufacturing and the wholesale and retail sale of eyeglasses and contact lenses.

Thomas Mando served as president of Tru–Site. His brother, William P. Mando, Jr., served as secretary-treasurer of Tru–Site until March 4, 1988. In 1987, Thomas Mando managed the day-to-day operations of the corporation, while William Mando was in charge of the corporate finances. However, both men had authority to sign checks on the corporate checking accounts. Tru–Site did not timely file its Employer's Quarterly Federal Tax Returns 941 forms for the four quarters of 1987. The total employee withholding taxes due for 1987 amounted to $71,030.23.

Thomas Mando first had actual knowledge of Tru–Site's tax deficiency in early 1988, when an expected payroll delivery did not take place. When Thomas Mando called the bank, he was told that the payroll would not be released because Tru–Site's account was overdrawn by $20,000. Thomas Mando arranged for Don Fritz, an accountant, to examine the situation. Fritz found the financial records of the company in disarray and discovered unopened tax notices.

Fritz contacted John Zelasko, a revenue officer for the IRS. Zelasko advised that the delinquent returns should be filed. These were eventually filed in February 1988, bearing the signature of Thomas Mando. However, no payment was remitted with these filings. On March 4, 1988, William Mando formally resigned as secretary-treasurer of Tru–Site. On March 7, 1988, a meeting took place with Thomas Mando, Zelasko, Fritz, and Mike Gray, another accountant. During subsequent meetings, an installment payment agreement was reached which allowed Tru–Site to pay $3,000 per month toward the delinquent employment withholding taxes. At that time, Zelasko assured Thomas Mando that it was in the IRS's best interest that the business continue to operate. The first $3,000 installment payment was made in May 1988. Although the IRS had a superior lien, Tru–Site continued paying other creditors.

In August 1988, Zelasko interviewed Thomas Mando to determine whether Thomas Mando should be held personally liable for the unpaid taxes, under 26 U.S.C. § 6672. Zelasko also examined a signed statement from William Mando stating that he was solely responsible for paying over trust fund taxes. Additionally, Zelasko reviewed bank signature cards, copies of cancelled checks to see who actually signed checks and tax returns on behalf of the corporation. Several months after these interviews and the review of documents, Zelasko recommended that Thomas Mando should not be pursued as a "responsible person." His recommendation was approved by the acting IRS Group Manager, Jo Ann Brumer.

In September 1989, the installment agreement was revised calling for monthly payments of $2,000. At the time of that installment agreement, the total owed for taxes and interest was $87,539.83. Penalties had been abated. However, no change was made in the responsible person recommendation even after Zelasko was promoted to a supervisory position in April 1989 and another revenue officer, Carol Coleman, took over the Tru–Site file. Furthermore, Coleman recommended that appellee's status be maintained and Zelasko approved that recommendation.

In January 1990, IRS officer, Sam McKinney, also supervised by Zelasko, became the new revenue officer for Tru–Site. At this time, McKinney recommended that Thomas Mando should be held personally responsible for Tru–Site's tax deficiency. In response to the IRS's apparent change of position, Thomas Mando and his attorney Gerald Dusing met twice with McKinney. At the second meeting in October 1990, Zelasko was also present. Once again Zelasko indicated that the IRS would not hold Thomas Mando personally liable. At that time, the IRS and Mando executed a subsequent agreement based on the understanding that Mando would not be held personally liable. The amount owed at that time was $66,381.05. Tru–Site continued to pay other creditors.

After the corporation had paid a total of some $43,000 toward the delinquent taxes, the IRS changed its position. In April 1991, McKinney recommended that Thomas Mando be assessed personal liability for the unpaid taxes. This recommendation was approved by Zelasko. The amount owed as of April 15, 1991 was $55,351.22, encompassing the remaining delinquent taxes owed for the second, third and fourth quarters of 1987.

In May 1991, Tru–Site filed a Chapter 7 bankruptcy petition. On June 21, 1991, Thomas Mando also filed for Chapter 7 protection. Subsequently, Mando disputed the IRS's personal assessment against him at an adversary proceeding in bankruptcy court.

During the trial, the IRS's motion for summary judgment was denied, and their objections to the admission of certain exhibits into evidence was overruled. The bankruptcy court concluded that Thomas Mando was a "responsible person" with regard to the delinquent employment withholding taxes. Pursuant to 26 U.S.C. § 6672, a determination that appellee is a "responsible person" normally results in personal liability. However, the bankruptcy court also held that the IRS was estopped from pursuing the delinquency against Thomas Mando. 154 B.R. 953.

Subsequently, both parties appealed that decision to this court. The IRS argues that the lower court committed reversible error in determining that the IRS was estopped from holding Mando personally liable. Additionally, the IRS argues that the lower court erred in admitting certain exhibits into evidence and denying the IRS's motion for summary judgment. On cross-appeal, Mando asserts that the lower court erred in finding him personally liable.

This court asked the parties to submit supplemental briefs on the issue of whether the government is estopped from asserting personal liability under § 6672, specifically addressing the cases of *Michigan v. City of Allen Park*, 954 F.2d 1201 (6th Cir.1992), and *United States v. Guy*, 978 F.2d 934 (6th Cir.1992). For the reasons stated below, this court concludes that the IRS is not estopped from asserting its claims that Mando is personally liable for the deficiency.

### III. ANALYSIS

Pursuant to 28 U.S.C. § 158(c), FED. R.CIV.P. 52(a), and Bankruptcy Rule 8013, findings of fact of the bankruptcy court shall not be set aside by this court unless clearly erroneous. However, a *de novo* standard of review applies to applicable conclusions of law.

### A. The I.R.S. Is Not Estopped From Asserting "Responsible Person" Status Against Mando

The court finds the holdings of *City of Allen Park, supra*, and *Guy, supra*, are controlling. In *Guy*, defendant filed a joint income tax return, and then, following the dissolution of his marriage, he filed an amended return, claiming married-filing separately status. As a result, he claimed entitlement to a refund of $248,751.25. The IRS refunded $276,079.99 based upon the amended return but consequently concluded that the refund was erroneously made and sought to recover it. *Guy*, 978 F.2d at 935–36.

Defendant argued that the IRS was equitably estopped from recovering the refund, claiming that he received oral assurances from an IRS official that "the IRS would never pursue him on this issue," and would not attempt to collect any additional funds from him regarding his 1983 tax liability. Defendant further claimed that he changed his financial position in reliance on these assurances, when he entered into a property settlement agreement with his wife. *Id.* at 936–37.

The Sixth Circuit disagreed, concluding that the government was not estopped. The court held that it is well established that estoppel cannot be used against the government on the same terms as against private parties and determined that, because the defendant had originally filed a joint return, he was precluded under applicable regulations from filing a separate return, since the time for it had expired. In quoting the Supreme Court, the court stated:

"[i]n *Heckler [v. Community Health Services*, 467 U.S. 51, 63 [104 S.Ct. 2218, 2225, 81 L.Ed.2d 42] (1984) ], the Supreme Court reiterated the general rule 'that those who deal with the government are expected to know the law and may not rely on the conduct of government agents contrary to the law.'

\*     \*     \*     \*     \*     \*

"In light of the treasury regulations, the defendant cannot be deemed to have reasonably relied on any statements the IRS might have made regarding his right to

retain the refund erroneously made to him."

*Id.,* at 937–40; *see City of Allen Park,* 954 F.2d at 1217 ("When public funds are involved the Supreme Court has adopted 'a most strict approach to estoppel claims.' ") quoting *Office of Personnel Management v. Richmond,* 496 U.S. 414, 425, 110 S.Ct. 2465, 2472, 110 L.Ed.2d 387 (1990).

■ In this case, Mando was indeed assured on two occasions that he would not be held personally liable, and he relied on those assurances. In essence, he argues that the prior assurances resulted in a compromise of his tax liability for the delinquency. However, the procedures for compromising tax liabilities are set forth in 26 U.S.C. §§ 7121–22. "[T]hese sections authorize the Secretary of the Treasury or an authorized delegate to settle any tax disputes and compromise any civil or criminal case arising under the internal revenue laws." *Klein v. Commissioner of Internal Revenue,* 899 F.2d 1149, 1152 (11th Cir.1990) (citing *Brooks v. United States,* 833 F.2d 1136, 1145 (4th Cir.1987)).

There is no dispute that the revenue officers and group managers with whom Mando dealt with did not have actual authority to compromise Mando's tax liability. *See McGee v. United States,* 566 F.Supp. 960, 961 (M.D.Fla.1982) ("Neither Revenue Agents nor Group Managers have been delegated authority to compromise claims under 26 U.S.C. § 7122."). Therefore, it was not reasonable for Mando to have concluded that the statements by the local revenue officers and group managers in regard to his "responsible person status" acted as a final compromise of his potential personal liability. Thus, this court concludes that, as a matter of law, the government is not equitably estopped, and the judgment of the bankruptcy court on this issue will be reversed.

---

1. For purposes of § 6672, a "responsible person" includes any officer or employee of a corporation who, as such officer or employee, is under a duty to perform the act in respect of which the violation occurs. 26 U.S.C. § 6671(b).

2. 26 U.S.C. § 6672(a) General Rule. Any person required to collect, truthfully account for, and pay over any tax imposed by this title who will-

## B. Mando Is Personally Liable for the Unpaid Withholding Taxes

■ Under § 6672, personal liability attaches if an individual meets two requirements. First, the individual must be a "responsible person" [1] under the statute. Second, the individual must "willfully" fail to pay over to the government the amount due. *Gephart v. United States,* 818 F.2d 469, 473 (6th Cir.1987). Although § 6672 imposes personal liability upon "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title,[2]" liability is not limited to those individuals in a position to perform all three of the enumerated duties. Instead, personal liability is predicated upon the existence of significant, as opposed to absolute, control of the corporation's finances, and more than one person can be deemed "responsible". *Slodov v. United States,* 436 U.S. 238, 250, 98 S.Ct. 1778, 1787, 56 L.Ed.2d 251 (1978); *Gephart,* 818 F.2d at 473 (citations omitted).

■ The test for determining if an individual is a "responsible person" primarily focuses on the degree of influence and control which the individual exerts over the financial affairs of the corporation, particularly regarding distribution of funds and the priority of payments to creditors. Among the particular factors the courts apply in determining whether individuals were "responsible persons" are:

"(1) the duties of the officer as outlined by the corporate by-laws; (2) the ability of the individual to sign checks of the corporation; (3) the identity of the officers, directors, and shareholders of the corporation; (4) the identity of the individuals who hired and fired employees; (5) the identity of the individuals who were in control of the financial affairs of the corporation." *Id.* at 473 (citations omitted).

■ As found by bankruptcy court, Thomas Mando had little or nothing to do with the

---

fully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

financial end of the business at the time the taxes were due, trusting his brother to take care of that end of the business. However, Thomas Mando was more than a mere figurehead in the company. Instead, the lower court determined that his authority in the business affairs was at least equal to his brother's. Thomas Mando was both a director and the president of the corporation. He was actively involved in the day-to-day operations of the business. Furthermore, both Thomas and William Mando had authority to sign the corporation's checks. Thus, Thomas Mando exercised significant control over the corporate finances, given his position as president and director of the corporation, his active involvement in the business, and his authority to sign checks on behalf of the corporation. (Bankruptcy Court's Findings of Fact and Conclusions of Law, p. 8–9). Accordingly, the bankruptcy court's finding that Thomas Mando is a "responsible person," is not clearly erroneous.

The second requirement for personal liability under § 6672 is whether the "responsible person" willfully failed to pay the taxes owed to the government. "The willfulness element is present if the responsible person had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the government." *Gephart*, 818 F.2d at 473, 475.

In this case, the bankruptcy court found that Thomas Mando had actual knowledge of the corporation's tax deficiency in early 1988. Subsequently, Mando, on behalf of the corporation, entered into an installment payment plan with the IRS. At that time, the IRS had a superior security interest in the corporation's proceeds. However, Mando continued to pay other creditors with subordinate security interests. Although Mando argues that if he had used the proceeds to satisfy tax obligations, his creditors would have closed him down, he bears the burden of proof, and the bankruptcy court found that he failed to present evidence that the creditors would have prevented him from using the proceeds to pay the IRS. *McDermitt v. United States*, 954 F.2d 1245, 1251 (6th Cir.1992); Bankruptcy Court's Findings of Fact and Conclusions of Law, p. 10–11.

Thus, by paying other creditors over the superior security interest of the I.R.S., Mando willfully failed to pay the tax obligations. Therefore, the judgment of the bankruptcy court on this issue is affirmed. The remaining arguments of the IRS are moot and alternatively without merit.

Accordingly, the court being advised,

**IT IS ORDERED** that the Judgment of the bankruptcy court be, and it is, hereby **affirmed in part** and **reversed in part;** and that this matter be and is hereby **remanded** to the bankruptcy court.